UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LYNN CAMPBELL, | CASE NO. 1:15-cv-00168-BAM |
| **Plaintiff** | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| **Defendant** | |

## INTRODUCTION

Plaintiff Michelle Lynn Campbell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The parties consented to the jurisdiction of the Magistrate Judge. (Doc. 7, 8.) The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

On August 22, 2011, Plaintiff filed her application for disability insurance benefits. AR 156-57. Plaintiff alleged that she became disabled as of September 24, 2009, due to general anxiety disorder, treatment resistant major depressive disorder, panic with agoraphobia, post-traumatic stress disorder, and menopause. AR 55, 175-85. Plaintiff's application was denied

initially and on reconsideration.  AR 99-102, 114-18.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Tamia N. Gordon held a hearing on August 12, 2013, and issued an order denying benefits on August 23, 2013.  AR 9-22, 29.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-3, 7-8.  This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on August 12, 2013, in Fresno, California.  AR 29.  Plaintiff appeared and testified.  AR 30.  Plaintiff was represented by attorney Robert Ishikawa.  AR 29.  Impartial Vocational Expert ("VE") Judith Najarian also testified.  AR 30.

In response to questions from the claimant's attorney, Plaintiff testified that she has an A.A. degree, but no special vocational training.  AR 33.  Plaintiff last worked in 2010 as an administrative assistant with the North Side Christian Church in the Women's Ministry Department.  AR 33.  Plaintiff's duties were typing, filing, photocopying, and answering the phones, but she had to quit because she because she could not maintain it.  AR 33, 42.  When asked what prevented her from working, Plaintiff testified she could not maintain her pace, equilibrium, or emotional responses and reactions enough to participate fully in what an employer would require from her.  AR 33.

When asked about treatment, Plaintiff reported receiving treatment at Kaiser, then the clinic at Sierra Vista, and finally Fresno County Mental Health.  AR 33-34.

When asked how her mental impairments affect her ability to work, Plaintiff reported she forgets what she is supposed to be doing, she can only do one thing at a time and she cries the whole time.  AR 35.

When asked about how she was previously able to work as an administrative assistant, Plaintiff reported that additional stresses in her life were so severe that she stopped being able to cope.  AR 35.  Plaintiff elaborated on her stress beginning with the fact that she raises three children by herself.  AR 35.  Plaintiff's oldest son is a "criminal," and tried to recruit Plaintiff's daughter, a freshman in high school, for a gang.  He even stole Plaintiff's car leaving her without transportation.  She constantly had the police in her house, along with criminals she was trying to

"run off."  AR 35-36.  Boys from her daughter's high school tried to force Plaintiff's daughter into prostitution.  Plaintiff also is responsible for taking care of her other son who has a mental disability.  Finally, Plaintiff's ex-husband retired and stopped providing assistance, causing Plaintiff to lose her house.  AR 36.

Plaintiff reported she isolates herself 16 hours out of 24 and has problems with concentration, attention, and memory.  AR 36-37.  Plaintiff also reported to suffer from roughly 2-6 panic attacks a month and from crying between 12-15 hours a day.  AR 37-38.  However, Plaintiff has never been hospitalized for any mental health reasons.  AR 39. \

When questioned about a typical day, Plaintiff reported she plans her days to maintain minimal levels of stress.  When Plaintiff is not checking on her children or parents, Plaintiff mostly reads or watches television.  AR 40.  Once a month, Plaintiff goes to church on Saturday nights.  Plaintiff drives a couple times a week to run errands.  AR 41.

When asked about medication for her mental health, Plaintiff reported that her current medications are helping, and she does not have any noticeable side effects other than dry mouth. AR 42.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Judith Najarian.  AR 43.  The VE testified that Plaintiff's past work was classified as receptionist, with readily transferrable clerical skills to sedentary and light levels.  The VE clarified that these skills would transfer readily to the job of general clerk.  AR 44-46.  The ALJ then asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and past work experience.  AR 46-47.  In the first hypothetical, the ALJ asked the VE to consider an individual who could perform work at all exertional levels, but was limited to simple, routine, repetitive tasks.  AR 46-47.  The VE testified that this individual could not perform any of Plaintiff's past work, but there were other unskilled jobs this individual could perform, such as mail clerk, price marker, and vacuum bottle assembler.  AR 47-48.

The ALJ then asked the VE to answer the same hypothetical but to add the limitation of work with no production rate or work pace. AR 48.  The VE reported that such an individual still could not perform Plaintiff's past work; however, such an individual could still work as a price

1  marker, or mail clerk, but not a vacuum bottle assembler.  AR 48-49.  The VE further testified that

2  another alternative without a production rate would be a stock checker, apparel person.  AR 49.

3       In the second hypothetical, the ALJ asked the VE to consider the same individual with the

4  residual functional capacity to perform work at all exertional levels except due to severe mental

5  impairments, must withdraw from the work station at unscheduled times, such that the absence

6  causes work not to be completed in a timely manner.  Furthermore, the individual could not

7  sustain sufficient concentration, persistence, or pace for an eight-hour-a-day work schedule.  AR

8  49.  The VE testified that there would be no jobs for this individual.  AR 50.

9  **Medical Record**

10       The entire medical record was reviewed by the Court.  AR 272-331.  The medical

11  evidence, summarized here, will also be referenced below as necessary to this Court's decision.

12       On August 21, 2011, Roxanne F. Banks, Ph.D., completed a psychological evaluation.  AR

13  284-88.  Plaintiff was in "obvious emotional distress," and Dr. Banks found Plaintiff's presenting

14  symptoms to be consistent with diagnoses of treatment resistant major depressive disorder, general

15  anxiety disorder, panic with agoraphobia, sleep disturbance NOS and post-traumatic stress

16  disorder.  AR 285.  Plaintiff's affect appeared dull with a sullen mood.  Her symptoms of clinical

17  depression appeared severe and her anxiety symptoms exacerbated during the evaluation.

18  Plaintiff's thought content was filled with catastrophizing and her thoughts were ruminating,

19  verbalizing helpless/hopeless thought content.  Plaintiff also admitted to suicidal thoughts and

20  visual stimuli.  AR 285-86.

21       On mental status examination, Plaintiff was oriented to person, place, time and purpose.

22  She had poor memory with a labile mood and blunted affect.  AR 286.  Testing indicated Plaintiff

23  was able to understand and remember one step instructions, but had a markedly limited ability to

24  understand or remember instructions consisting of two or more steps.  Plaintiff also was unable to

25  understand and recall detailed instructions and was unable to maintain attention and concentration

26  for extended periods of time.  Plaintiff appeared hypervigilant and easily distracted.  AR 286.  Dr.

27  Banks diagnosed Plaintiff with treatment resistant major depressive disorder, general anxiety

28  disorder, panic with agoraphobia, post-traumatic stress disorder, sleep disorder NOS, psychosis

NOS, and sleep disorder.  AR 287.  Dr. Banks concluded that Plaintiff was "unable to work" due to the presence of chronic psychiatric disorders, and her symptoms had "proven to be treatment resistant." AR 287-88.

Plaintiff met with treating physician Sarah Morgan, M.D. on five occasions.  At their first appointment on August 24, 2011, Plaintiff had not seen a psychiatrist in more than one year.  AR 17, 293.  On mental status exam, Plaintiff was oriented to person, place, time and situation.  Her affect was constricted, her mood was dysphoric (depressed/anxious), her memory and thought processes were intact and her concentration, judgment and insight were fair.  Plaintiff agreed to try gabapentin.  AR 294.

At her next appointment on September 22, 2011, Plaintiff reported that her medication was helping with her anxiety, though she was still anxious.  Plaintiff also reported that she was not experiencing panic attacks, and that she was sleeping okay.  AR 291.

On October 19, 2011, Dr. Morgan opined that Plaintiff was "much improved on gabapentin." AR 290.  Plaintiff's memory and thought processes were intact, she had no suicidal or homicidal ideation, and her concentration and insight were fair.  AR 290.

On January 3, 2012, Dr. Morgan observed that Plaintiff "[felt] the medication is very helpful" so much so that she had not needed to utilize her prescription for Klonopin for two weeks. AR 300.

On March 6, 2012, Dr. Morgan reported that Plaintiff restarted Klonopin when she started school, taking classes including algebra, history, political science, and library technology. AR 17, 299.  On that occasion, Plaintiff's concentration was poor and her mood dysphoric, but her mental status exam was otherwise normal.  AR 299.  On the same date, Dr. Morgan also completed a Medical Source Statement, in which she opined that Plaintiff was markedly limited in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and in the "ability to respond appropriately to changes in the work setting." AR 304-05.

Plaintiff began seeing Colleen Connor, M.D. for mental health treatment on July 17, 2012. AR 316.  Plaintiff's primary diagnosis was major depressive disorder, recurrent, severe without

psychotic features.  AR 318.  In September 2012, Plaintiff told Dr. Connor that she started the school semester on August 13, 2012.  Plaintiff complained of irritability and hopelessness, and was tearful and emotional.  AR 314-15.  In October 2012, Plaintiff told Dr. Connor, that she was "doing okay" with some anxiety, but she was "getting through it[;]" that she was working "some hours at the college library" and keeping up with school work; and that she was taking her medication, including Klonopin which "help[ed] a lot" on a "bad day."  AR 18, 312.  In November 2012, Plaintiff reported that she would be graduating with her AS degree in the spring, and had applied to Fresno State University.  Dr. Connor opined that Plaintiff had a "much improved" response to her medication.  AR 18, 330.

On January 21, 2012, the State agency doctor who considered Dr. Banks' opinion and Plaintiff's medical records opined that Plaintiff was capable of understanding and remembering adequately for simple and detailed tasks, but was limited to carrying out simple and some detailed tasks. Plaintiff also was capable of interacting appropriately with limited public contact and could engage appropriately with peers and supervisors.  AR 58-64.  On July 14, 2012, a second state agency doctor affirmed this finding.  AR 79-84.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 22.  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 24, 2009, her alleged onset date.  AR 14.  Further, the ALJ found that Plaintiff suffered from major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder, and panic with agoraphobia and sleep disturbance.  AR 14.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments individually or in combination.  AR 14-15.

Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, except that she was limited to simple, routine, and repetitive tasks.  AR 16-20.  The ALJ also found that Plaintiff could not perform any past relevant work, but that there were jobs existing in significant numbers

1  in the national economy that Plaintiff could still perform.   AR 21-22.   The ALJ therefore

2  concluded that Plaintiff was not disabled under the Social Security Act.   AR 22.

3  ## SCOPE OF REVIEW

4    Congress has provided a limited scope of judicial review of the Commissioner's decision

5  to deny benefits under the Act.   In reviewing findings of fact with respect to such determinations,

6  this Court must determine whether the decision of the Commissioner is supported by substantial

7  evidence. 42 U.S.C. § 405(g).   Substantial evidence means "more than a mere scintilla,"

8  *Richardson v. Perales*, 402 U.S. 389, 402, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), but less than a

9  preponderance.   *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).   It is "such

10  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11  *Richardson*, 402 U.S. at 401.   The record as a whole must be considered, weighing both the

12  evidence that supports and the evidence that detracts from the Commissioner's conclusion.   *Jones*

13  *v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).   In weighing the evidence and making findings, the

14  Commissioner must apply the proper legal standards.   *E.g., Burkhart v. Bowen*, 856 F.2d 1335,

15  1338 (9th Cir. 1988).   This Court must uphold the Commissioner's determination that the claimant

16  is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's

17  findings are supported by substantial evidence.   *See Sanchez v. Sec'y of Health and Human Serv.*,

18  812 F.2d 509, 510 (9th Cir. 1987).

19  ## REVIEW

20    In order to qualify for benefits, a claimant must establish that he or she is unable to engage

21  in substantial gainful activity due to a medically determinable physical or mental impairment

22  which has lasted or can be expected to last for a continuous period of not less than twelve months.

23  42 U.S.C. § 1382c(a)(3)(A).   A claimant must show that he or she has a physical or mental

24  impairment of such severity that they are not only unable to do their previous work, but cannot,

25  considering age, education, and work experience, engage in any other kind of substantial gainful

26  work which exists in the national economy.   *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th

27  Cir. 1989).   The burden is on the claimant to establish disability.   *Terry v. Sullivan*, 903 F.2d 1273,

28  1275 (9th Cir. 1990).

1

## DISCUSSION

2

**Medical Opinions**

3    Plaintiff contends that the ALJ erred by giving limited weight to the opinions of Drs.

4  Morgan and Banks.  Doc. 13 at 11.  Specifically, Plaintiff alleges the ALJ's proffered reasons for

5  discounting the medical opinions of Drs. Morgan and Banks do not rise to the level of specificity

6  and legitimacy required.  *Id.*

7

**Legal Standard**

8    Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

9  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

10 (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

11 physicians).  As a general rule, more weight should be given to the opinion of a treating source

12 than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647

13 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor,

14 it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391,

15 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the

16 Commissioner may not reject this opinion without providing "specific, legitimate reasons"

17 supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499,

18 502 (9th Cir. 1983).

19   If a treating physician's opinion is not given "controlling weight" because it is not "well-

20 supported" or because it is inconsistent with other substantial evidence in the record, the

21 Commissioner considers specified factors in determining the weight it will be given.  Those

22 factors include the "[l]ength of the treatment relationship and the frequency of examination" by

23 the treating physician; and the "[n]ature and extent of the treatment relationship" between the

24 patient and the treating physician.  20 C.F.R. § 404.1527(c)(2)(i)-(ii).  Additional factors relevant

25 to evaluating any medical opinion include the amount of relevant evidence that supports the

26 opinion and the quality of the explanation provided; the consistency of the medical opinion with

27 the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors"

28 such as the degree of understanding a physician has of the "disability programs and their

1   evidentiary requirements" and the degree of his or her familiarity with other information in the

2   case record. *Id.* § 404.1527(c)(3)-(6).

3      The opinion of an examining physician is, in turn, entitled to greater weight than the

4   opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

5   *Gallant v. Heckler,* 753 F.2d 1450, 1454 (9th Cir. 1984). As is the case with the opinion of a

6   treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting

7   the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the

8   opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another

9   doctor, can only be rejected for specific, legitimate reasons that are supported by substantial

10  evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

11     The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

12  that justifies the rejection of the opinion of either an examining physician or a treating physician.

13  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can

14  reject the opinion of a treating or examining physician, based in part on the testimony of a

15  nonexamining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir.

16  1989); *Andrews*, 53 F.3d at 1043.

17     Because the opinions of Drs. Morgan and Banks were contradicted by state agency

18  doctors, the issue is whether the Commissioner had specific and legitimate reasons supported by

19  substantial evidence in the record for rejecting their opinions. *See Murray*, 722 F.2d at 502.

20     Dr. Morgan

21     The ALJ assigned limited weight to Dr. Morgan's opinion that Plaintiff was unable to

22  work because (1) the opinion was contrary to Dr. Morgan's treatment notes, (2) medication

23  improved Plaintiff's functioning, and (3) Plaintiff engaged in significant activities of daily living.

24  AR 18. The Court finds that these are specific and legitimate reasons, supported by substantial

25  evidence, to discount the opinion of Plaintiff's treating physician, Dr. Morgan.

26     First, the ALJ appropriately found that Dr. Morgan's findings were contrary to her

27  treatment notes. "[T]he opinion of a treating physician may be rejected where an ALJ finds

28  incongruity between a treating doctor's assessment and his own medical records." *Jones v.*

9

1  *Colvin*, No. 1:14-cv-01991-JLT, 2016 WL 816484, at *12 (E.D. Cal. Mar. 2, 2016) (citing

2  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)); *see also Batson v. Comm'r.*, 359 F.3d

3  1190, 1195 (9th Cir. 2004) (an ALJ may properly reject a physician's opinion that is conclusory

4  and unsupported by objective medical findings); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

5  2003) (ALJ properly rejected limitations imposed by treating physician where they were

6  unsupported by the physician's treating notes); *Burkhart*, 856 F.2d at 1339–40 (ALJ properly

7  rejected treating physician's opinion which was unsupported by medical findings, personal

8  observations or test reports); 20 C.F.R. §§ 404.1527(c)(3) (in weighing a medical source opinion,

9  the ALJ will consider the explanation and medical evidence the doctor provides in support of his

10  opinion, as well as the consistency of the opinion with other evidence in the record).  Despite Dr.

11  Morgan's conclusion that Plaintiff was unable to work, the ALJ noted that Dr. Morgan

12  consistently reported that Plaintiff's mental status examinations were essentially within normal

13  limits, that Plaintiff's medications were helpful and that she was able to attend community college

14  successfully. AR 17, 290, 291, 299, 300.   Therefore, the ALJ appropriately discounted Dr.

15  Morgan's opinion because it was contradicted by her treatment notes.

16       Second, the ALJ appropriately found that Dr. Morgan's opinion was contrary to evidence

17  showing medication improved Plaintiff's functioning.   AR 18.   "Impairments that can be

18  controlled effectively with medication are not disabling for the purpose of determining eligibility

19  for [disability] benefits."  *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

20  Here, the ALJ considered Plaintiff's reports to Dr. Morgan that medications were very helpful.

21  AR 18.  According to Dr. Morgan's records, Plaintiff reported that although she was still anxious,

22  she was not experiencing panic attacks, she was sleeping okay, and the medication was "very

23  helpful."   AR 291, 300.   Dr. Morgan also noted that Plaintiff was "much improved on

24  gabapentin."  AR 290.   The ALJ additionally considered subsequent treatment notes in which

25  Plaintiff continued to report improvement with medications, and that her depression remained well

26  controlled.  AR 18.  For instance, in October 2012, Plaintiff was "doing okay" with some anxiety,

27  but she was "getting through it."  AR 18, 312.   She was working "some hours at the college

28  library," keeping up with school work; and taking her medication, including using Klonopin

occasionally which "help[ed] a lot" on a "bad day."  AR 18, 312.  In November 2012, Plaintiff was "much improved" and would be graduating with an Associate in Science degree.  AR 18, 330. In June 2013, Plaintiff's depression continued to be well-controlled, she had graduated from community college with honors, a GPA of 3.89, and a President's award, and would be attending Fresno State in the fall.  Her mental status examination was within normal limits.  AR 18, 322. Substantial evidence therefore supports the ALJ's determination that Plaintiff's functioning improved with medication.

Third, the ALJ appropriately discounted Dr. Morgan's findings because they were contrary to Plaintiff's significant activities of daily living.  AR 18.  An ALJ may reject an opinion when the physician sets forth restrictions that "appear to be inconsistent with the level of activity" engaged in by the claimant.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  In *Rollins*, the court discounted a treating physician's opinion that the a claimant's condition prevented her from engaging in "bending . . . [or] crouching" and indicated the claimant should never be exposed to any "vibrations or noise," because these restrictions were inconsistent with the level of activity that the claimant engaged in by maintaining a household and raising two young children, with no significant assistance from her ex-husband.  *Id.*  Similar to *Rollins*, the ALJ determined that Dr. Morgan's opinion regarding Plaintiff's inability to work was inconsistent with the level of activity Plaintiff engaged in by caring for her children without help from her ex-husband, caring for her Alzheimer's afflicted father, and successfully completing an AS degree at community college during the period in which she alleged she was too disabled to work.  AR 18, 19.  Additionally, the ALJ considered Plaintiff's testimony that she could watch television, do laundry, listen to music, read the bible, check on her children, mother and father, drive a few times a week, attend church once a week, was able to attend her personal grooming successfully, and stopped working for reasons unrelated to any disabling impairments.  AR 20.  In sum, Plaintiff's allegation of a condition that precluded all work activity was inconsistent with her daily activities.  *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (ability to perform ordinary household and personal tasks is inconsistent with not being able to work).

Further, the ALJ is responsible for resolving conflicts in the record, and a court will not

1    disturb an ALJ's findings if they are supported by the evidence.  *Key v. Heckler*, 754 F.2d 1545,

2    1549 (9th Cir. 1985).  There is ample medical evidence in the record to support the ALJ's decision

3    to assign little weight to Dr. Morgan's opinion that Plaintiff was unable to work.

4         In conclusion, the Court finds that the ALJ provided specific and legitimate reasons, under

5    the appropriate legal standard, and supported by substantial evidence, for assigning limited weight

6    to Dr. Morgan's opinion.

7         <u>Roxanne Banks, Ph.D.</u>

8         Dr. Banks, an examining physician, found that Plaintiff was "unable to work," and that

9    Plaintiff was "treatment resistant."  AR 18-19, 284-8.  The ALJ declined to afford significant

10   weight to this opinion because:  (1) the record did not reflect any longitudinal history of treatment;

11   (2) the ultimate determination of disability was reserved to the Commissioner; (3) it was contrary

12   to both the overall medical evidence of record demonstrating that Plaintiff's functioning improved

13   with medication and the evidence of Plaintiff's daily activities; and (4) it relied on Plaintiff's

14   subjective report of symptoms and limitations, which were found not credible.  AR 19-20.  As

15   with the opinion of Dr. Morgan, the Court finds that these are specific and legitimate reasons,

16   supported by substantial evidence, to discount Dr. Banks' opinion.

17        First, the ALJ discounted Dr. Banks' findings because no longitudinal history existed

18   between Plaintiff and Dr. Banks.  "[I]f an examining physician is not familiar with the claimant's

19   longitudinal history of medical impairments, his opinions will generally be given less weight than

20   those of a treating source."  *Belmont v. Astrue*, No. 1:08cv0181 DLB, 2009 WL 2591347, at *20

21   (E.D. Cal. Aug. 21, 2009) (ALJ entitled to consider the treatment relationship in assigning weight

22   to examining physician's opinion); 20 C.F.R. § 404.1527(c)(2).

23        Second, the ALJ appropriately found that Dr. Banks' speculation regarding Plaintiff's

24   employability carried no probative weight.  AR 19.  Whether a claimant can work is an issue

25   reserved specifically to the Commissioner, and a physician's opinion on this issue is not entitled to

26   special significance.  20 C.F.R. §404.1527(d)(1); SSR 96-5p, 1996 WL 374183 (July 2, 1996)

27   (medical source opinion about whether an individual is unable to work, even when offered by

28   treating source, is not entitled to controlling weight or given special significance); *see also*

1   *Jackson v. Colvin*, No. 1:14-cv-01573-EPG, 2016 WL 775929, at *10 (E.D. Cal. Feb. 29, 2016)

2   (statement offered by a physician that a plaintiff is unable to work not entitled to any special

3   significance because it constitutes an opinion on issue reserved to the Commissioner); *Henry v.*

4   *Colvin*, No. 1:15-cv-00100-JLT, 2016 WL 164956, at *15 (E.D. Cal. Jan 14, 2016) (ALJ properly

5   gave minimal weight to physician's opinion that claimant was unemployable; determination of

6   whether a claimant is disabled is reserved for the Commissioner); *cf. McLeod v. Astrue*, 640 F.3d

7   881, 884-45 (9th Cir. 2010) (law reserves disability determination to Commissioner). Therefore,

8   the ALJ properly gave Dr. Banks' opinion regarding Plaintiff's employability no controlling

9   weight.

10          Third, the ALJ appropriately discounted Dr. Banks' opinion as inconsistent with the

11   overall record. Inconsistency with the medical record is a specific, legitimate reason for rejecting

12   a physician's opinion. *Tommasetti*, 533 F.3d at 1040-41; 20 C.F.R. § 404.1527(c)(4) ("Generally,

13   the more consistent an opinion is with the record as a whole, the more weight we will give to that

14   opinion."). Dr. Banks' opinion that Plaintiff's "[s]ymptoms have proven to be treatment resistant"

15   was "contrary to the overall medical evidence of record that reveal[ed][Plaintiff's] functioning

16   [did] improve with medications." AR 19, 290, 291, 300, 312, 330. Further, Dr. Banks' opinion

17   that Plaintiff was significantly impaired was undermined by Plaintiff's ability to "care for small

18   children and her disabled father, as well as attend college successfully." AR 19, 35-36, 40, 330.

19   Therefore, the ALJ appropriately discounted Dr. Banks' opinion because it was inconsistent with

20   the record.

21          Fourth, the ALJ appropriately discounted Dr. Banks' opinion because it was not supported

22   by objective findings, tests, and diagnostics, and instead "relied quite heavily on the subjective

23   report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as

24   true, most, if not all, of what the claimant reported." AR 19. "An ALJ may reject a . . .

25   physician's opinion if it is based to a large extent on a claimant's self-reports that have been

26   properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041; *Morgan v. Comm'r of Soc. Sec.*

27   *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion premised upon the claimant's own

28   accounts of his symptoms and limitations may be disregarded where those complaints have been

13

properly discounted).   Although Dr. Banks completed a mental status examination and named various tests, she did not include any test results in the opinion, or explain how they influenced her findings.  AR 284, 286.  Therefore, the ALJ appropriately discounted Dr. Banks' medical opinion because it appeared to rely heavily on Plaintiff's subjective reports, which the ALJ found not credible, and was not substantiated by any objective findings, tests, or diagnostics.  AR 19. Plaintiff has not challenged the ALJ's credibility determination.

In conclusion, the Court finds that the ALJ provided specific and legitimate reasons, under the appropriate legal standard, and supported by substantial evidence, for discounting the opinion of Dr. Banks.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgement in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Michelle Lynn Campbell.

IT IS SO ORDERED.

Dated:   **July 18, 2016**                    /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE